**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Supima,<br><br>    Plaintiff,<br>vs.<br><br>Philadelphia Indemnity Insurance Company,<br><br>    Defendant. | No. CV-20-00617-PHX-SPL<br><br>**ORDER** |

Before the Court is Plaintiff Supima's Motion for Partial Summary Judgment (Doc. 50), Plaintiff's Separate Statement of Facts in Support of Plaintiff's Motion for Partial Summary Judgement (Doc. 51), Defendant Philadelphia Indemnity Insurance Company ("Philadelphia")'s Motion for Summary Judgment and Response in Opposition to Plaintiff's Motion for Partial Summary Judgment (Doc. 108), and Defendant's Objections to Plaintiff's Separate Statement of Facts in Support of Plaintiff's Motion for Partial Summary Judgement and Defendant's Statement of Material Facts in Support of Its Cross Motion for Summary Judgment. (Doc. 109) The Motions have been fully briefed and are ready for consideration.[1] (Docs. 118, 119, 120, 124) For the following reasons, partial summary judgment will be granted in favor of Defendant.

---

[1] Because it would not assist in resolution of the instant issues, the Court finds the pending motions are suitable for decision without oral argument. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

## I. BACKGROUND[2]

Defendant is an insurance company incorporated in Pennsylvania. (Doc. 1-1 at ¶¶3–4) Plaintiff is an Arizona non-profit corporation. (Doc. 1-1 at ¶2)

Plaintiff was a customer of Defendant from October 2007 to July 2018. (Doc. 51 at ¶1) Plaintiff purchased eleven director's and officer's ("D&O") liability insurance policies from Defendant. (Doc. 51 at ¶¶1, 13) The main policies at issue are Policy No. PHSD783800, with a coverage period from October 6, 2012 to July 1, 2013 and Policy No. PHSD1146497, with a coverage period from July 1, 2016 to July 1, 2017. (Docs. 1-1 at ¶¶7c,7h,18,24; 9 at ¶¶14–15) Plaintiff seeks coverage of costs incurred defending an underlying arbitration.

The parties disagree about when the arbitration began. On May 2, 2013, Tradeline Enterprises Pvt. Ltd. ("Tradeline"), a wholesaler of threads and yarn, sent Plaintiff a letter titled "Demand for Arbitration and Appointment of Arbitrator Under Article XI of Supima License Agreement , License No.: India-58, In the Matter of Tradeline Enterprises Pvt Ltd, et al. v. Supima Association of America" notifying Plaintiff it wanted to arbitrate a dispute pursuant to the licensing agreement between itself and Plaintiff. (Docs. 1-1 at¶34; 108 at 4) The licensing agreement contained an arbitration clause. (Doc. 12-2 at 69) According to Defendant, Plaintiff and Tradeline went back and forth on various issues, including selecting an arbitrator, throughout 2013. (Doc. 109 at 23–24) According to Defendant, Plaintiff incurred "Defense Costs" during this time. (Doc. 109 at 24) According to Plaintiff, it did not incur any such expenses. (Doc. 51 at ¶50) In September of 2016, Tradeline filed a demand for arbitration before the American Arbitration Association ("AAA"). (Docs. 51 at ¶30; 109 at 11) In May 2017, Tradeline filed a Statement of Claim with the AAA's International Centre for Dispute Resolution ("ICDR"), which Plaintiff forwarded to Defendant. (Docs. 51 at ¶¶34–35; 109 at 12) On February 28, 2018, Defendant issued a reservation of rights letter to Plaintiff, reserving its rights "with respect to whether it had

---

[2] The following facts are undisputed unless otherwise noted.

2

an obligation to advance Defense Costs under the 16-17 Policy." (Docs. 1-1 at ¶31, 109 at 24) On May 4, 2018, Defendant informed Plaintiff it had no obligation to advance the costs for the arbitration under the 2012–13 policy because Plaintiff failed to report the initial "Demand for Arbitration." (Docs. 1-1 at ¶34, 109 at 25) Defendant also told Plaintiff it had no obligation to advance the costs under the 2016–17 policy because Tradeline's Claim was not made during the 2016–17 policy coverage period. (Doc. 109 at 25)

Plaintiff filed a complaint on February 28, 2020 in Maricopa County Superior Court, seeking (1) declaratory judgment against Defendant for the "Defense Costs," and asserting (2) a breach of contract claim, and (3) a breach of the implied covenant of good faith and fair dealing (Doc. 1-2 at ¶¶67–85) Defendant filed an Answer asserting two counterclaims, (1) a declaratory judgment that it has no obligation to pay the "Defense Costs" under the 2012–13 policy and (2) a declaratory judgment that it has no obligation to pay the "Defense Costs" under the 2016–17 policy. (Doc. 9 at ¶¶23–37)

Plaintiff moved for partial summary judgment on Count I of the Complaint and Counts I and II of the Counterclaim. (Doc. 50 at 1) Plaintiff's position is that even if the May 2013 letter constitutes a "Claim" as Defendant asserts, Defendant still must pay all Defense Costs incurred after May 26, 2017 in the Tradeline arbitration, unless Defendant can establish an affirmative defense. (Doc. 50 at 1) Defendant moves for summary judgment on the same Counts. (Doc. 108 at 1) Defendant's position is that it has no obligation to pay the costs under either policy. (Doc. 108 at 2)

## II.   **LEGAL STANDARD**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Material facts are those facts "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact arises if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party moving for summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record, together with affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the movant is able to do so, the burden then shifts to the non-movant who "must do more than simply show that there is some metaphysical doubt as to the material facts," and, instead, must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). When considering a motion for summary judgment, a court must view the factual record and draw all reasonable inferences in a light most favorably to the nonmoving party. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002). "In reviewing cross-motions for summary judgment, each motion must be considered on its own merits." *Acosta v. City Nat'l Corp.*, 922 F.3d 880, 885 (9th Cir. 2019) (internal quotations omitted). When parties file cross-motions for summary judgment, the court must review each motion separately, giving the nonmoving party for each motion the benefit of all reasonable inferences. *Eat Right Foods Ltd. v. Whole Foods Mkt, Inc.*, 880 F.3d 1109, 1118 (9th Cir. 2018).

### III. DISCUSSION

The parties move for partial summary judgment on whether Defendant is obligated to pay Plaintiff's Defense Costs under either the 2012–13 policy or the 2016–17 policy. Specifically, the parties seek summary judgment on Count I of the Complaint and Counts I and II of the Counterclaim. (Docs. 50 at 1, 108 at 1) Plaintiff seeks a declaratory judgment that Defendant is obligated to pay Supima's Defense Costs from the Tradeline case under either the 2012-2013 policy or the 2016-2017 policy. (Doc. 50 at 4) Defendant seeks a declaratory judgment that it does not have to pay for the Defense Costs under the 2012-2013 policy (Count One of the Counterclaim) or under the 2016-2017 policy (Count Two of the Counterclaim). (Doc. 12 at ¶¶23–37)

Plaintiff brought its declaratory judgment count under Arizona's Uniform Declaratory Judgments Act, A.R.S. § 12-1832. (Doc. 50 at 4) "Because declaratory relief

is a procedural vehicle used to declare the legal rights and relationships of parties, there is authority indicating that a state declaratory judgment claim brought in a federal diversity case must be converted to a claim brought under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202." *Jajo v. Auto-Owners Ins. Co.*, No. CV-13-00069-PHX-SRB, 2013 WL 12195628, at *2 (D. Ariz. Oct. 2, 2013) (internal citations omitted). However, the standards under state and federal law are consistent with each other. *See id.* "Declaratory relief is appropriate (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Santan Crossing Pro. Plaza Condo. Ass'n v. Westfield Ins. Co.*, No. CV-20-00792-PHX-SPL, 2020 WL 4814345, at *3 (D. Ariz. Aug. 17, 2020) (citing *Guerra v. Sutton*, 783 F.2d 1371, 1376 (9th Cir. 1986)). Declaratory judgment is appropriate here because the parties need clarification on the interpretation of the insurance agreements between them and it will afford relief from the uncertainty surrounding the agreements.

Plaintiff's position is that the 2016-2017 policy does not require a claim to be "first made" during the policy period, but that it provides coverage for "claims made against [Supima] during the Policy Period," which would include the Tradeline arbitration. (Doc. 50 at 3) Plaintiffs also posit that even if the May 2013 Tradeline Letter constituted a Claim, the 2017 Tradeline case is a separate claim made against Supima during the 2016-2017 policy period that Supima timely reported to Philadelphia during the policy period. (Doc. 50 at 3) Plaintiff also takes the position that even if the May 2013 Letter and Tradeline case are a single claim, the Defense Costs are covered under the 2012-2013 policy because the policies are "claims-made policies" that provide coverage for any claims against the insured during the coverage period. (Doc. 50 at 3) According to Plaintiff, an insurer cannot deny coverage based on when it received notice of the claim unless the insurer can establish it was prejudiced by the timing of the notice or an affirmative defense. (Doc. 50 at 3)

Defendant's position is that the 2013 Tradeline Letter is a claim under the 2012-2013 policy that Plaintiff did not properly report. (Doc. 108 at 7–9) Defendant further states

that the events arising in 2016 and 2017 are part of the same claim beginning in 2013, and thus cannot be covered because Defendant did not receive proper notice of the claim. (Doc. 108 at 9–11) Defendant does not believe it needs to establish prejudice. (Doc. 108 at 19–20)

To determine whether Defendant owes Plaintiff its Defense Costs incurred in the underlying arbitration, the Court must answer the following questions:

1. *What is a "claim" for purposes of the 2012-2013 policy?*
2. *Can "claims" be aggregated under the policies?*
3. *When must claims be reported under the policies?*

The Court will address each question in turn. These questions require The Court to interpret the insurance policies. "The interpretation of an insurance contract is a question of law" for the Court." *Nat'l Fire Ins. Co. of Hartford v. James River Ins.*, 162 F. Supp. 3d 898, 903 (D. Ariz. 2016), *clarified on denial of reconsideration*, No. CV-14-00765-PHX-JAT, 2016 WL 2606984 (D. Ariz. May 6, 2016) (quoting *Liristis v. Am. Family Mut. Ins. Co.*, 204 Ariz. 140, 144 (Ct. App. 2002)). The Court must "construe the written terms of [the policy] to effectuate the parties' intent," and "to protect the reasonable expectations of the insured." *Id.* (citing *Liberty Ins. Underwriters, Inc. v. Weitz Co.*, 215 Ariz. 80, 83 (Ct. App. 2007)). The language of the policy is viewed from the standpoint of an average person "untrained in the law or the field of insurance." *Id.* (quoting *Lirisitis*, 204 Ariz. at 139–40). When the policy is unambiguous, courts must "afford it its plain and ordinary meaning and apply it as written." *Id.* (quoting *Liberty*, 215 Ariz. at 83). When the policy language contains ambiguities, "Arizona courts no longer resolve ambiguities in an insurance policy by automatically construing the policy in favor of the insured." *Id.* (quoting *Nichols v. State Farm Fire & Casualty Co.*, 175 Ariz. 354, 356 (Ct. App. 1993)). Now, "the rule in Arizona is that [courts] construe a clause subject to different interpretations by examining the language of the clause, public policy considerations, and the purpose of the transaction as a whole." *Id.* (quoting *Nichols*, 175 Ariz. at 356). However, "[i]f all else fails and the clause remains ambiguous, the insurance policy will be construed to provide coverage." *Fall v.*

*First Mercury Ins. Co.*, 225 F. Supp. 3d 842, 846 (D. Ariz. 2016) (citing *State Farm Mut. Auto. Ins. Co. v. Connolly*, 212 Ariz. 417, 418 (Ariz. Ct. App. 2006)).

The Court now turns to the questions.

**1. What is a "claim" for purposes of the 2012-2013 policy?**

The Court must determine whether the 2013 Letter from Tradeline to Supima titled "Demand for Arbitration and Appointment of Arbitrator Under Article XI of Supima License Agreement , License No.: India-58, <u>In the Matter of Tradeline Enterprises Pvt Ltd, et al. v. Supima Association of America</u>" was a Claim, and if it was, if it constitutes a single "Claim" combined with the 2016-2017 proceeding in front of the ICDR.

Philadelphia's 2012-2013 D&O Policy, which Supima purchased, defines "Claim" as:

> B. "Claim means…"
>
> > 1. Any written demand for monetary or non-monetary relief; or
> >
> > 2. Any judicial, civil, administrative, regulatory, or arbitration proceeding (including any appeal therefrom), which subjects an Insured to a binding adjudication of liability for monetary or non-monetary relief for a Wrongful Act; or
> >
> > 3. Any written request to toll or waive any statute of limitations applicable to any actual or potential suit or cause of action against an Insured.
>
> …"

(Doc. 1-4 at 13) (emphasis omitted). The parties presented arguments regarding Sections B(1) and B(2). Plaintiff argues the 2013 Letter was not a "Claim" under Section B(1) of the 2012-2013 policy because it contained no demands for monetary or nonmonetary relief and because it did not subject Supima to an arbitration. (Doc. 118 at 9–10, 13–14) Plaintiff further argues the coverage-triggering event occurred in 2016 when Tradeline filed a Demand for Arbitration with the AAA's ICDR. (Doc. 50 at 7) According to Plaintiff, the arbitration clause in its Licensing Agreement with Tradeline dictated that the AAA's rules would govern the arbitration. (Doc. 118 at 10) Under those rules, the arbitration does not

commence until the date on which the ICDR Administrator receives the written Notice of Arbitration. (Doc. 118 at 10) Therefore, the letter was not a "Claim" under Section B(2) of the 2012-2013 policy either. (Doc. 118 at 11)

Defendant first contends the Letter is a Claim under Section B(1) of the 2012-2013 policy because it was a "Demand for Arbitration" and the two outcomes of arbitration are necessarily monetary or nonmonetary relief. (Doc. 108 at 3–4) Defendant further contends that the Letter contained a statement of Tradeline's losses and the amount it sought to recover at arbitration, which makes it a demand. (Doc. 108 at 7–8) Second, Defendant contends that the Letter is a "Claim" under Section B(2) because it commenced an arbitration proceeding under the terms of the arbitration clause in the Licensing Agreement. (Doc. 108 at 8–9) According to Defendant, the proceeding began because Tradeline suggested an arbitrator, which is the "first order of business" of an arbitration. (Doc. 108 at 8) Defendant replied to Plaintiff's arguments about the AAA with an assertion that the AAA rules "did not apply to disputes in the first instance." (Doc. 124 at 6) According to Defendant, the arbitration clause first required the parties to come to an agreement on an arbitrator, and if they could not, only then would they go to the AAA. (Doc. 124 at 6)

If the Court finds the Letter is a "Claim" under Section B(2), it will not continue to the Section B(1) analysis. Furthermore, if the Court finds the arbitration proceeding began in 2013 under Section B(2), the 2016-2017 event is not a separate "Claim," but a continuation of an arbitration that began in 2013.

The 2013 Letter states in pertinent part:

> I write on behalf of Tradeline Enterprises ….to demand arbitration against the Supima Association of America …pursuant to the license agreement entered between Supima and Tradeline…
>
> ….
>
> Tradeline hereby demands binding arbitration pursuant to the arbitration clause in the License Agreement. Tradeline nominates David Tierney of Sachs Tierney P.A. as the arbitrator to preside over the parties' arbitration and render his binding decision. Please let us know within the next thirty days whether Mr. Tierney is acceptable to Supima, and if he is not

> acceptable, please nominate an alternative arbitrator for our consideration. If we do not receive a response from Supima in the next thirty days then Tradeline will presume that Mr. Tierney is not acceptable to Supima. In the event that Mr. Tierney is not acceptable to Supima, Tradeline will refer the arbitration to the American Arbitration Association's branch in Arizona in accordance with Article XI of the License Agreement.
>
> ….
>
> Supima's wrongful conduct destroyed Tradeline's business. As a result, Tradeline suffered over $50 million in damages and seeks to recover these damages through this arbitration as required by the License Agreement.
>
> ….
>
> Through this arbitration, Tradeline is seeking to recover the damages resulting from Supima's breaches, including punitive damages, pre-judgment and post-judgment interst and reasonable attorneys' fees and costs. Tradeline seeks damages in an amount to be proven at arbitration, believed to be in excess of $50,000,000.
>
> ….
>
> While this demand for arbitration describes the nature of Tradeline's claims against Supima and the bases for these claims so that Supima may assess the claims that Tradeline will pursue in arbitration, Tradeline expressly reserves the right to file a more detailed statement of claims once an arbitrator is selected either by mutual agreement of the parties of by appointment of the American Arbitration Association, as set forth in Article XI of the License Agreement.

(Doc. 109-6 at 3–4,9) The Letter clearly states the monetary damages Tradeline was claiming against Supima. (Doc. 109-6 at 9) It also clearly requests an action on Supima's end: confirm the selected arbitrator or pick a new one. (Doc. 109-6 at 4)

The Court now looks to the Licensing Agreement's arbitration clause, which reads as follows:

> In the event of any dispute arising from this Agreement the parties agree that the matter be referred to an arbiter approved by both parties for his opinion, and in the event of the arbiter of the opinion [sic] not being acceptable to both parties, the matter shall be referred to the American Arbitration Association's branch in Arizona for decision and they will apply the Law of the State of Arizona.

9

(Doc. 12-2 at 69) The Court reads this clause to mean that the parties to the Licensing Agreement intended Arizona law to apply to the arbitration.

According to the Licensing Agreement, Supima and Tradeline were to find an arbiter agreeable to them. (Doc. 12-2 at 69) If the results of the arbitration were not acceptable, they were to submit the claim to the AAA. (Doc. 12-2 at 69) Plaintiff argues the rules of the AAA applied to the arbitration from the beginning, and that under AAA rules, an arbitration does not begin until the ICDR Administrator receives the written Notice of Arbitration from the parties arbitrating. (Doc. 118 at 10) Defendant argues the AAA rules did not kick in until the matter was referred to the AAA, that selecting an arbiter is the first step in an arbitration, and thus the letter began the arbitration proceeding. (Docs. 108 at 8, 124 at 6) While the Court agrees the AAA rules dictate a Notice of Arbitration be submitted before an arbitration before the AAA begins, the Court also reads the Arbitration Clause in the Licensing Agreement in such a way that referral to the AAA was intended as a backup measure. Under the Arizona Revised Uniform Arbitration Act,

> A person initiates an arbitration proceeding by giving *notice in a record* to the other parties to the agreement to arbitrate in the agreed manner between the parties or, in the absence of an agreement, by certified mail, return receipt requested and obtained, or by service as authorized for the commencement of a civil action. The notice must describe the nature of the controversy and the remedy sought.

A.R.S. § 12-3009(A) (emphasis added). "[A] a person gives notice to another person by taking action that is reasonably necessary to inform the other person in ordinary course, whether or not the other person acquires knowledge of the notice." A.R.S. § 12-3002(A). "'Record' means information that is inscribed on a tangible medium or that is stored in an electronic or other medium and that is retrievable in perceivable form." A.R.S. § 12-3001(6).

The 2013 Letter clearly gave Plaintiff notice in a record of Tradeline's intent to arbitrate in the agreed manner set forth in the Licensing Agreement. Therefore, the arbitration proceeding was initiated in 2013, making the letter a "Claim" under Section

B(2) of the policy.

**2. Can "claims" be aggregated under the policies?**

The parties disagree on whether the 2016-2017 event before the ICDR constitutes its own claim or if it is part of the claim beginning in 2013. Defendant argues the Letter and the 2016 demand for arbitration constitute one Claim, and that Philadelphia was not given proper notice under the 2012-2013 policy, which will be addressed in the following section. (Doc. 108 at 8–10) Plaintiff argues the 2016-2017 event is the only Claim and should be covered under the 2016-2017 policy, or alternatively, the two events are separate Claims and thus the 2016-2017 event was properly reported to Defendant. (Doc. 50 at 8–11)

The Court found the 2013 Letter was a "Claim" under Section B(2) of the policy, meaning it found the entire arbitration proceeding began in 2013, not 2016, according to the Arizona Revised Uniform Arbitration Act. *See supra* III.1. Therefore, the Court need not address whether the claims can or should be aggregated and turns instead to the notice issue.

**3. When must claims be reported under the policies?**

Because the Court found the arbitration began in 2013, it need only interpret the language of the 2012-2013 policy. The 2012-2013 D&O Policy states at the beginning: "**EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS IS A CLAIMS-MADE POLICY. CLAIMS-MADE POLICIES ONLY COVER THOSE CLAIMS MADE AGAINST THE INSURED DURING THE POLICY PERIOD**." (Doc. 1-4 at 4) It also states in the "Common Policy Conditions" under subheading "NOTICE/CLAIM REPORTING PROVISIONS:"

> In the event that a Claim is made against the Insured….the Insured shall, as a condition precedent to the obligations of the Underwriter under this Policy, give written notice of such Claim….as soon as practicable to the Underwriter during this Policy Period, or, if applicable, during any Extension Period, but, not later than 60 days after the expiration date of this Policy….

(Doc. 1-5 at 6) (emphasis omitted).

Plaintiff argues the 2012-2013 policy is a "claims-made" policy and not a "claims-made-and-reported" policy, and thus Supima had no duty to report the Claim (Tradeline's Letter) during the 2012-2013 policy period. (Doc. 50 at 12–16) Plaintiff further argues the "notice/claim-reporting provisions" section is insufficient to convert the policy to a claims-made-and-reported policy. (Doc. 50 at 14–16) Defendant argues that the notice/claim reporting provisions section establishes a strict deadline, which means this is a claims-made-and-reported policy "and/or did not require Supima to report the 2013 Demand for Arbitration to Philadelphia during the 12-13 policy or within 60 days after its expiration." (Doc. 108 at 16) Plaintiff further argues the "reasonable expectation" doctrine applies and because Defendant did not inform Plaintiff of the notice provisions, they cannot be used against Plaintiff. (Doc. 50 at 14–15) Defendant argues the cases Plaintiff cite to for the reasonable expectation doctrine are distinguishable from the facts here. (Doc. 108 at 18) Finally, Plaintiff argues the notice-prejudice rule applies, and Defendant must show it was prejudiced as a result of the late notice from Plaintiff. (Doc. 50 at 16–17) Defendant argues the notice-prejudice rule does not apply because the policy at issue is a claims-made-and-reported policy and even if it wasn't, the condition requiring the insured to provide notice of a claim during the policy period is set forth in plain language and should be enforced as written. (Doc. 108 at 19)

Arizona's definitions of "claims-made" and "claims-made-and-reported" policies differ from other districts and states. *See Emissions Tech., Inc. v. Twin City Fire Ins. Co.*, No. CV10-0393-PHX-NVW, 2010 WL 4579250, at *3 (D. Ariz. Nov. 4, 2010). Under other state/district law, policies known as "claims-made-and-reported" policies are considered "claims-made" policies, and require the insured to report the legal claim against them to their insurer "during the same policy period, or a definite time after." *Id. See also 11333 Inc. v. Certain Underwriters at Lloyd's, London*, No. CV-14-02001-PHX-NVW, 2015 WL 1578501, at *5 (D. Ariz. Apr. 9, 2015) (quoting *Thoracic Cardiovascular Assocs. v. St. Paul Fire & Marine Ins. Co.*, 181 Ariz. 449, 453 (Ct. App. 1994) ([T]ransmittal of

the notice of the claim to the insurer is the most important aspect of the claims made policy. A claims made policy extends coverage if the negligent or omitted act is discovered and brought to the attention of the insurer within the policy term.").

Plaintiff's definition of "claims-made" policies comes from the Southern District of Mississippi and from the Ninth Circuit interpreting California law. (Doc. 50 at 12, citing *Pension Trust Fund for Operating Eng'rs v. Fed. Ins. Co.*, 307 F.3d 944, 956–57 (9th Cir. 2002) and *Jones v. Lexington Manor Nursing Ctr.*, 480 F. Supp. 2d 865, 868 (S.D. Miss. 2006)). The policy definition Plaintiff asks the Court to use is not one recognized in this state.

Furthermore, in *11333 Inc. v. Lloyd's*, the court engaged in an analysis regarding a type of insurance policy that did not fit neatly into Arizona policy labels, and it importantly noted that a label should not be used when it "strains the language of the policy." *11133*, 2015 WL 1578501 at *6–7. Here, the label given to the policy was "claims-made." (Doc. 1-4 at 4) The language of the policy supports the label as it is interpreted under Arizona law by providing a definite time period in which the insured had to report to the insurer any claims made against it during the policy period. (Doc. 1-5 at 6) The Court in *Emissions Tech, Inc.* provided a very clear table showing Arizona claims-made policies require the insured to report claims to its insurer during the policy or a definite time thereafter. 2010 WL 4579250 at *3. Nothing about the policy language in the instant case was unclear, and in fact it supports rather than strains the policy label.

Turning to the reasonable expectations doctrine, the Court notes Arizona interprets insurance policies differently than ordinary contracts. *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 140 Ariz. 383, 388 (1984)). Arizona courts will not enforce boilerplate terms in insurance policies in the following situations:

> 1. Where the contract terms, although not ambiguous to the court, cannot be understood by the reasonably intelligent consumer who might check on his or her rights, the court will interpret them in light of the objective, reasonable expectations of the average insured;
>
> 2. Where the insured did not receive full and adequate notice

> of the term in question, and the provision is either unusual or unexpected, or one that emasculates apparent coverage;
>
> 3. Where some activity which can be reasonably attributed to the insurer would create an objective impression of coverage in the mind of a reasonable insured;
>
> 4. Where some activity reasonably attributable to the insurer has induced a particular insured reasonably to believe that he has coverage, although such coverage is expressly and unambiguously denied by the policy.

*Gordinier v. Aetna Cas. & Sur. Co.*, 154 Ariz. 266, 272–73 (1987) (internal citations omitted). Although Plaintiff argues the language requiring it to give notice to Philadelphia within 60 days of the policy's end is unenforceable boilerplate that destroys the purpose of the policy (Doc. 50 at 14–15), this situation is not one in which the reasonable expectation doctrine of exclusion would apply. Under Arizona law, claims-made policies should necessarily provide an end-date for the time to report. *Emissions Tech, Inc.*, 2010 WL 4579250 at *3. The 2012-2013 policy did just that. (Doc. 1-5 at 6) While Plaintiff's representatives may not have read the entire policy, the **CLAIMS-MADE POLICY** label located on the front page in bold, all-caps type should have triggered them to look for the time limit within the policy. The time limit is a necessary clarifying term of a claims-made policy, not boilerplate language. *See Emissions Tech, Inc.*, 2010 WL 4579250 at *4 (finding that the time limit added clarity to the policy, harmonizing it with the rest of the policy, and removing ambiguity).

Next, Plaintiff argues the late notice/prejudice rule applies. (Doc. 50 at 16–17) It does not. Arizona Courts do not apply the notice-prejudice rule to claims-made policies. *See, e.g.*, *MBP Collection LLC v. Everest Nat'l Ins. Co.*, No. CV-17-04022-PHX-GMS, 2019 WL 110978, at *3 (D. Ariz. Jan. 4, 2019), *Emissions Tech, Inc.*, 2010 WL 4579250 at *3, *Sletten v. St. Paul Fire & Marine Ins. Co.*, 161 Ariz. 595, 597 (Ct. App. 1989) (specifically declining to apply the late notice/prejudice rule to claims-made policies). The Arizona Court of Appeals, Division One found that requiring the insurer to show prejudice would constitute an extension of coverage not contemplated in the original policy. *Thoracic*, 181 Ariz. 449 at 455 (Ct. App. 1994) ("Such a change in the coverage provided

by claims made policies would significantly affect both the basis upon which premiums have been calculated and the cost of claims made insurance.") (citing *Zuckerman v. National Union Fire Ins. Co.*, 100 N.J. 304, 495 A.2d 395, 406 (1985)). Allowing such an extension of coverage in these situations would affect the professional liability insurance industry on a wide scale. *Id.* This Court noted the rule could apply when the policy is unclear about reporting deadlines. *See Emissions Tech, Inc.*, 2010 WL 4579250 at *4. but Here, the policy was not unclear, and the Court will not require Defendant to show prejudice or any other affirmative defense. The Court finds this is a claims-made policy that required Plaintiff to report claims made against it to Defendant insurer within 60 days of the policy period's end.

## IV.  CONCLUSION

Plaintiff failed to report a claim made against it for three years. Though Plaintiff may have erroneously believed the 2013 Letter was not a claim, Arizona law unambiguously states arbitration proceedings begin at the demand stage. *See supra* III.1. To order coverage of such a late-reported claim would defy state and national conventions of insurance law. *See supra* III.3. The Court also cannot find that the 2012-2013 policy was exceptional in such a way that would call for deviating from the typical insurance policy labels long-recognized by the state of Arizona, or for applying the reasonable expectations doctrine or late notice/prejudice rule. *See supra* III.3.

In reviewing the motions, responsive briefings, and accompanying record, the Court finds no genuine dispute as to any material fact. It finds Defendant is entitled to judgment as a matter of law. Declaratory judgment will be granted in favor of Defendant on Counts I and II of the Counterclaim. Count I of the Complaint will be dismissed.

Therefore,

**IT IS ORDERED** that Plaintiff Supima's Motion for Partial Summary Judgment (Doc. 50) is **denied**.

**IT IS FURTHER ORDERED** that Defendant Philadelphia Indemnity Insurance Company's Motion for Summary Judgment (Doc. 108) is **granted**.

**IT IS FURTHER ORDERED** that Count I of the Complaint is **dismissed with prejudice**.

**IT IS FURTHER ORDERED** that the requests for declaratory judgment on Counts I and II of Defendant Philadelphia Indemnity Insurance's Counterclaim for Declaratory Judgment (Doc. 9) are **granted**.

Dated this 16th day of June, 2021.

Honorable Steven P. Logan
United States District Judge